

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

KRYSTLE WILSON,                §
                               §
          Plaintiff,           §
                               §
VS.                            §   NO. 4:11-CV-421-A
                               §
CASH AMERICA INTERNATIONAL,    §
INC., ET AL.,                  §
                               §
          Defendants.          §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the
motion of defendants, Cash America International, Inc., Cash
America Net Holdings, LLC, Cash America Net of Texas, LLC
("CashNet TX"), Cash America Net of Illinois, LLC, and Enova
Financial Holdings, Inc., to stay and compel arbitration. After
having considered such motion, the response of plaintiff, Crystal
Wilson, thereto, defendant's reply, the record of this action,
and legal authorities, the court has concluded that such motion
should be granted to the extent provided in this memorandum
opinion and order.

I.

Background

This action was initiated on December 4, 2009, in the District Court of Tarrant County, Texas, 236th Judicial District, when plaintiff filed a seven-page pleading complaining that Cash America Net of Illinois, d/b/a CashNet USA, in its dealings with plaintiff violated provisions of the Texas Debt Collection Practices Act and the Texas Deceptive Trade Practices Act and committed a common-law invasion of privacy by intrusion.  In the three-count pleading, plaintiff sought a declaratory judgment that the defendants' conduct violated the Texas Deceptive Trade Practices Act and an award of damages.

On April 19, 2011, plaintiff filed an amended pleading in this action, titled "Plaintiff's First Amended Class Action Petition."  The amended pleading added four defendants, was seventy-one pages long (with hundreds of pages of exhibits), and alleged fifteen counts--six based on what plaintiff referred to as the Texas Credit Services Organization Act ("TCSOA"), Tex. Fin. Code §§ 393.001, et seq.; three based on what plaintiff referred to as the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code §§ 392.001, et seq.; and six based on what plaintiff referred to as the federal Fair Debt Collection Practices Act

2

("FDCPA"), 15 U.S.C. §§ 1692, <u>et seq.</u>[1]  Plaintiff purported in
her amended pleading to bring the action individually and on
behalf of all others similarly situated in the State of Texas.

On June 22, 2011, defendants filed their notice of removal,
causing this action to be removed from state court to this court.
The notice of removal contains sufficient allegations to support
subject matter jurisdiction of this court over all claims
asserted in the amended pleading.

II.

<u>Defendants' Motion</u>

On June 29, 2011, defendants filed their motion to stay and
compel arbitration.  Defendants alleged and provided proof that:

Plaintiff's relationship with the defendants had to do with
services provided to her by CashNet TX, acting as a credit
services organization, when she obtained fourteen short-term
loans in 2009.  In connection with each of the fourteen loan
transactions, plaintiff and CashNet TX executed documents that
contained provisions mandating that all disputes involving
plaintiff were to be determined by arbitration.  Typical of the
definition of the scope of the mandated arbitration is the

---

[1]For convenience, the court refers in this memorandum opinion to the statutes relied on by
plaintiff by the shorthand references TCSOA, TDCA, and FDCPA.

following language contained in an instrument signed by plaintiff

and CashNet TX, through a representative, in June 2009:

> Scope.  For purposes of this Arbitration Provision the
> words "dispute" and "disputes" are given the broadest
> possible meaning and include, without limitation ....
> (b) all federal or state law claims, disputes or
> controversies, arising from or relating directly or
> indirectly to this Agreement (including the Arbitration
> Provision), .... (d) all common law claims, based upon
> contract, tort, fraud, or other intentional torts; (e)
> all claims based upon a violation of any state or
> federal constitution, statute or regulation; .... (g)
> all claims asserted by you individually against us
> and/or any of our employees, agents, directors,
> officers, shareholders, governors, managers, members,
> parent company or affiliated entities (hereinafter
> collectively referred to as "related third parties"),
> including claims for money damages and/or equitable or
> injunctive relief; (h) all claims asserted on your
> behalf by another person; (i) all claims asserted by
> you as a private attorney general, as a representative
> and member of a class of persons, or in any other
> representative capacity, against us and/or related
> third parties (hereinafter referred to as
> "Representative Claims"); ....[2]

Mot., App. at 017.

The five defendants named in the action are either a parent

company or affiliates of each other, with Cash America

International, Inc., at the top.  Enova Financial Holdings, LLC,

and Cash America Net Holdings, LLC, each has a sole member, which

is a non-party by the name of Cash America Online Services, Inc.,

that, in turn, is a wholly owned subsidiary of Cash America

---

[2]The "us" and "our" in the quoted language refer to CashNet TX, and the "you" and "your" refer to plaintiff.  Mot., App. at 013.

International, Inc.  CashNet TX and Cash America Net of Illinois, LLC, each has a sole member, which is Cash America Net Holdings, LLC.

CashNet TX has not received a written notice from plaintiff electing to opt out of any of the arbitration provisions in any of the fourteen sets of documents related to plaintiff's loan transactions.

*     *     *     *     *

The evidentiary support for each of the allegations in defendants' motion was provided through a declaration of Keith Weinberger, who identified himself as an employee of Enova Financial Holdings, LLC, and the General Manager of the U.S. lending business of Cash American Net Holdings, LLC.  Id. at 1-2.

III.

<u>Analysis</u>

In response to defendants' motion, plaintiff urged the following theories:

    (1)   Inasmuch as CashNet TX is the only defendant who is a party to the arbitration agreements, the other defendants cannot invoke the arbitration provisions.

    (2)   The text of the federal Credit Repair Organizations Act ("CROA") makes clear that Congress contemplated a judicial forum for the resolution of CROA

5

claims; likewise, the text of the TCSOA makes clear that the

Texas Legislature intended for TCSOA claims to be resolved

in a judicial forum, a right that cannot be waived, with the

consequence that the arbitration agreements are void and

unenforceable.

(3)   The arbitration agreements are unenforceable

because the text of the FDCPA establishes that Congress also

contemplated a judicial forum for the resolution of FDCPA

claims; and, because of the similarities between the federal

and state unfair debt collection statutes, the same argument

extends to the TDCA claims.

(4)   In any event, plaintiff's unfair debt collection

practices claims do not fall within the scope of the

arbitration agreements.

The court has concluded that, for the reasons stated below,

none of plaintiff's theories has merit.

A.   <u>All Defendants Are Entitled to the Benefit of the
     Arbitration Agreement</u>

The record shows without dispute that one of the defendants

is a "parent company" and that all defendants are "affiliated

entities" and "related third parties," as those words are used in

the arbitration agreement.  The agreement unambiguously states

that it applies to "all claims asserted by [plaintiff]

6

individually against [CashNet TX] and/or any of [its] . . .

parent company or affiliated entities (hereinafter collectively

referred to as 'related third parties')." Mot, App. at 017.

Moreover, the arbitration provisions specifically state under the

heading "Binding Effect" that they "benefit[] [CashNet TX] . . .

and related third parties." Id. at 019. Under the clear terms

of the agreements, all defendants, as "related third parties,"

are beneficiaries of the arbitration provisions.

    A non-party who is a third-party beneficiary of an

arbitration agreement has standing to compel arbitration. See,

e.g., MS Dealer Serv. Corp. v. Franklin, 177 F.3d 943, 947 (11th

Cir. 1999); Spear Leeds & Kellogg v. Cent. Life Assurance Co., 85

F.3d 21, 27 (2nd Cir. 1996); see also Todd v. S.S. Mut.

Underwriting Ass'n (Berm. Ltd.), 601 F. 3d 329, 333-34 (5th Cir.

2010); Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347,

355-56 (5th Cir. 2003); Arnold v. Arnold Corp., 920 F.2d 1269,

1281 (6th Cir. 1990). Moreover, there is authority suggesting

that a non-signatory may compel arbitration where, as in the

instant action, the complaining party alleges that the signatory

and non-signatory engaged in interdependent and concerted

misconduct related to the contract. See, e.g., Brantley v.

Republic Mortg. Ins. Co., 424 F.3d 392, 395-96 (4th Cir. 2005);

Grigson v. Creative Arts Agency, LLC, 210 F.3d 524, 527-28 (5th Cir. 2000); MS Dealer Serv. Corp., 177 F.3d at 947.

The court is satisfied that the non-signatory defendants in this action have standing to move to compel arbitration of plaintiff's claims.

B.    None of the Statutes on Which Plaintiff Relies Prohibit Arbitration

Plaintiff's theories (2) and (3), supra at 5-6, are each predicated on the holdings and reasoning of two courts that held that the CROA, 15 U.S.C. § 1679, et seq., provided a non-waivable right to sue, with the consequence that an arbitration clause in a consumer's agreement with a credit repair organization was void.  The court decisions on which plaintiff relied were Greenwood v. CompuCredit Corp., 615 F.3d 1204 (9th Cir. 2010), rev'd and remanded, CompuCredit Corp. v. Greenwood, No. 10-948, 2012 WL 43514 (U.S. Jan. 10, 2012), and Alexander v. U.S. Credit Management, Inc., 384 F. Supp.2d 1003 (N.D. Tex. 2005). Plaintiff reasoned that the wording and structure of the statutes on which she bases her claims are so similar to the wording and structure of the CROA that the Greenwood v. CompuCredit and Alexander holdings should be given effect as to each of the statutes on which she relies.

When plaintiff prepared her response to defendants' motion, her argument was plausible.  However, her argument has been undercut by the January 10, 2012 decision of the Supreme Court in CompuCredit Corp. v. Greenwood.  Essentially, the holding of the Supreme Court was that because the CROA is silent on whether claims under it can proceed in an arbitrable forum, the Federal Arbitration Act ("FAA") requires the arbitration agreement between the credit repair organization and the consumer to be enforced according to its terms.

The court agrees with plaintiff that the similarities between the CROA and the statutes on which she relies are such that a court decision concerning the effect, if any, of the wording and structure of CROA on an arbitration agreement would be persuasive in deciding enforceability of an arbitration agreements affecting her claims.  The Supreme Court's holding in CompuCredit v. Greenwood appears to invalidate plaintiff's theories (2) and (3).[3]  The court concludes that the FAA requires the arbitration agreements in question to be enforced according to their terms.

---

[3]To whatever extent plaintiff is contending that the class action provisions of the arbitration agreements cannot be enforced, the court notes that the contention would be at odds with the decision of the Supreme Court in AT&T Mobility LLC v. Concepcion, --- U.S.---, 131 S. Ct. 1740 (2011).  In Concepcion, the Supreme Court held that the FAA preempted a California judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts.

C.   <u>Plaintiff's Unfair Debt Collection Practices Claims Are
     Within the Scope of the Arbitration Agreement</u>

The arbitration provisions in question are broad.  They
cover, <u>inter alia</u>, "all federal or state law claims, disputes, or
controversies arising from or relating directly or indirectly to
this Agreement . . . [and] all claims based upon a violation of
any state or federal . . . statute . . . ."  Mot, App. at 017.
Emphasizing the broadness of the arbitration provisions, they
further state that the terms are to be "given the broadest
possible meaning."  <u>Id.</u>  Also, each of the arbitration provisions
expressly provides that it "survives . . . performance of any
transaction between [plaintiff] and [CashNet TX]."  <u>Id.</u> at 019.
The court concludes that the arbitration provisions are broad
enough to cover plaintiff's unfair debt collection practices
claims, particularly bearing in mind the liberal federal policy
favoring arbitration agreements.  <u>Moses Cone Mem'l Hosp. v.
Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983).

                *     *     *     *     *

Having concluded that none of plaintiff's theories as to why
she should not be required to submit her claims against
defendants to arbitration are valid, the court is ordering that
plaintiff, if she wishes to further pursue her claims, submit her
claims against defendants to arbitration pursuant to the

                          10

arbitration provisions of the agreements she made when she
obtained the short-term loans in 2009.  Rather than to grant a
stay of this action, the court knows of no reason why this action
should not be dismissed on the assumption that plaintiff will
comply with the court's ruling and that defendants will honor
whatever obligations they have under the arbitration provisions
in question.

IV.

Order

Therefore,

The court ORDERS that if plaintiff wishes to pursue further
her claims against defendants she do so through the arbitration
procedures outlined in the agreements she made when services were
provided to her by CashNet TX in connection with the short-term
loans she obtained in 2009, and that if plaintiff initiates any
such arbitration proceeding defendants comply with whatever
obligations they have under such agreements relative to such
proceeding or proceedings.

The court further ORDERS that all claims asserted by
plaintiff against defendants in this action be, and are hereby,
dismissed.

11

The court further ORDERS that the request of defendants for a stay of this action be, and is hereby, denied as moot.

SIGNED February 1, 2012.

JOHN McBRYDE
United States District Judge